IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| John A. Bismack, | ) | |
| | ) | C.A. No. 6:21-04103-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Xerox Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff John A. Bismack's ("Bismack") partial motion for summary judgment and Defendant Xerox Corporation's ("Xerox") motion for summary judgment. For the reasons set forth below, Bismack's motion is denied and Xerox's motion is granted in part and denied in part. Further, in light of the court's decision on the motions, this matter is remanded to the state court as the remaining claims plainly fail to satisfy the amount in controversy requirement for diversity jurisdiction and the court declines to exercise supplemental jurisdiction.[1]

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On May 21, 2019, Bismack accepted a written offer of employment as a US Distribution Account Manager with Xerox with a start date of June 3, 2019. (Pl. Mem. Supp. Partial Summ. J. Ex. A (Offer Letter), ECF No. 51-2, & Ex. B (Jeffrey Cox ("Cox") Dep. 13-14, 17.) From June 3, 2019, until July 23, 2021, Bismack was employed by Xerox as a US Distribution Account Manager. (Id. Ex. G (Resignation Email), ECF No. 51-8.) Bismack's salary for this

---

[1] Under Local Rule of Civil Procedure 7.08, the court may decide motions without a hearing.

1

position was set forth in an offer letter that Bismack accepted, which stated in pertinent part as follows:

> Your starting salary for this position will be paid semimonthly at the annualized rate of $77,220.00.
>
> On your start date, your compensation will be adjusted to 75% base salary with eligibility to earn incentives. Your annualized base salary of $57,915 will be paid semimonthly.

(Id. Ex. A (Offer Letter), ECF No. 51-2.)

Bismack alleges that Xerox has failed to pay certain wages that he is owed pursuant to the offer letter. Specifically, Bismack contends that his annual salary was $77,220.00, consisting of a semimonthly paycheck in the amount of $2413.13, quarterly "true up" payments in the amount of $3233.21, and commissions in the amount of $796.52 paid in the months that he did not receive a "true up" payment. (Bismack Mem. Supp. Partial Summ. J. 2-3, ECF No. 51-1.) Bismack alleges that he was not paid "true up" payments for the first, second, and third quarters of 2020. (Id. at 3, ECF No. 51-1.) In addition, Bismack submits that $1500.00 was improperly withheld from his final paycheck without prior notice as partial reimbursement for a leadership retention award of $8600.38 that Xerox paid Bismack in December 2020. (Id. at 4, ECF No. 51-1.) Thus, Bismack alleges that Xerox unlawfully withheld $11,199.63 from his wages. (Mot. Partial Summ. J. 1, ECF No. 51.)

In contrast, Xerox contends that Bismack was not guaranteed a salary in the amount of $77,220.00. (Xerox Mem. Supp. Summ. J. 10, ECF No. 52-1.) Instead, Xerox alleges that the offer letter states that Bismack's salary would be $57,915.00 with the eligibility to earn incentives. (Id., ECF No. 52-1.) Further, Xerox states that the incentive compensation plan for

the distribution operations team was changed from a Sales Incentive Compensation Plan to a Management Incentive Plan for the 2020 fiscal year.  (Id. Ex. F (Cox Decl. ¶¶ 4-13), ECF No. 52-7.)  However, due to the COVID-19 pandemic, Xerox did not meet the targets required to trigger incentive payments under the 2020 Management Incentive Plan.  (Id. Ex. F (Cox Decl. ¶ 16), ECF No. 52-7.)  Therefore, Xerox submits Bismack is not due any "true up" payments for the first three quarters of 2020.  Further, Xerox alleges that because no incentive payments were paid under the Management Incentive Plan due to the pandemic, Bismack was offered the leadership retention award.  (Id. Ex. F (Cox Decl. ¶¶ 16-17), ECF No. 52-7.)  Xerox alleges that the leadership retention award was required to be repaid if Bismack left employment before December 31, 2021, and that pursuant to the written terms and conditions of the award, Bismack was aware that the leadership retention award reimbursement could be deducted from his paycheck.  (Xerox Mem. Supp. Summ. J. Ex. F (Cox Decl. ¶¶ 17-21), ECF No. 52-7.)

Bismack filed the instant lawsuit in state court on November 10, 2021, alleging a violation of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. § 41-10-10 et seq., and claims for breach of contract and quantum meruit.  (Compl., ECF No. 1-1.)  Xerox removed this case on the basis of diversity jurisdiction on December 21, 2021, alleging that the amount in controversy exceeded $75,000 because Bismack was seeking unpaid wages, treble damages, and attorney's fees.  (Not. Removal, ECF No. 1.)  Xerox filed an answer on January 19, 2022, and on March 14, 2022, after seeking leave of court, filed an amended answer and a counterclaim for breach of contract alleging that Bismack was required to repay the leadership retention award.  (Ans., ECF No. 14); (Am. Ans. & Countercl., ECF No. 24.)  On November 15,

2022, Bismack filed the instant motion for partial summary judgment on his claim that Xerox violated the SCPWA. (Bismack Mot. Partial Summ. J., ECF No. 51.) The next day, on November 16, 2022, Xerox filed a motion for summary judgment on Bismack's claims and Xerox's breach-of-contract counterclaim against Bismack. (Xerox Mot. Summ. J., ECF No. 52.) Xerox filed a response in opposition to Bismack's partial motion for summary judgment on December 13, 2022. (Xerox Resp. Opp'n, ECF No. 58.) Bismack filed a response in opposition to Xerox's motion for summary judgment on December 14, 2022. (Bismack Resp. Opp'n, ECF No. 60.) On December 20, 2022, Bismack filed a reply. (Bismack Reply, ECF No. 61.) Xerox filed a reply on December 20, 2022. (Xerox Reply, ECF No. 62.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted). Although the court must "view the evidence in the light most

4

favorable to the nonmoving party," Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017), the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

### III. DISCUSSION

#### A. SCPWA Claim

#### 1. Wages

The SCPWA provides that "every employer in the State shall pay wages due . . . ." S.C. Code Ann. § 41-10-40(A). The SCPWA "is remedial legislation designed to protect working people and assist them in collecting compensation wrongfully withheld." Dumas v. InfoSafe Corp., 463 S.E.2d 641, 645 (S.C. Ct. App. 1995). The SCPWA requires employers to notify employees of "normal hours and wages agreed upon" and to "pay all wages due to the employee within forty-eight hours of [the employee's termination]." S.C. Code Ann. §§ 41-10-30, -50. Both Bismack and Xerox have filed motions for summary judgment on Bismack's claim that he is entitled to unpaid wages owed for "true up" payments in the amount of $3233.21 for each of the first three quarters of 2020. Bismack's offer letter, which he accepted, states in pertinent part that:

> Your starting salary for this position will be paid semimonthly at the annualized rate of $77,220.00.
>
> On your start date, your compensation will be adjusted to 75% base salary with eligibility to earn incentives. Your annualized base salary of $57,915 will be paid semimonthly.

(Pl. Mem. Supp. Partial Summ. J. Ex. A (Offer Letter), ECF No. 51-2.) This language in the offer letter is inconsistent and, thus, ambiguous. First, the offer letter indicates that Bismack

"will be paid semimonthly at the annualized rate of $77,220.00." Then, the offer letter states that he will be paid an annualized base salary of $57,915 with the "eligibility to earn incentives." (Id. Ex. A (Offer Letter), ECF No. 51-2.) Although Bismack's pay stubs are difficult to follow, it appears that for 2019, Bismack received a semimonthly paycheck in the amount of $2413.13, monthly commissions in the amount of $796.52, and quarterly "true up" payments in an additional amount.[2] (Bismack Mem. Supp. Partial Summ. J. Ex. D (Bismack Paystubs 9, 14), ECF No. 51-5.) Xerox counters that the offer letter provides that Bismack's salary was not $77,220.00, but $57,915.00 with the eligibility to earn incentives pursuant to the applicable incentive plan. (Xerox Mem. Supp. Summ. J. 10, ECF No. 52-1.)

Genuine issues of material fact exist regarding whether Bismack was guaranteed a salary of $77,220.00, and thus is owed unpaid wages. "Generally, factual disputes under the [SCPWA] are to be determined by a jury." Evans v. Taylor Made Sandwich Co., 522 S.E.2d 350, 353 (S.C. Ct. App. 1999), overruled on other grounds by Barron v. Lab. Finders of S.C., 713 S.E.2d 634 (2011). Further, South Carolina law clearly provides that although "it is a question of law for the court whether the language of a contract is ambiguous[,]" the meaning of an ambiguous term is not a matter for the court to decide. S.C. Dep't of Nat. Res. v. Town of McClellanville, 345 S.C. 617, 550 S.E.2d 299, 302-03 (2001). "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties . . . . [and] [t]he determination of the parties' intent is then a question of fact." Id.

---

[2] It is difficult to determine the exact amount of Bismack's "true up" payments for 2019. However, it is clear that Bismack received a true up payment for $3233.21 for the fourth quarter of 2019. (Xerox Mem. Supp. Summ. J. Ex. D (Bismack Pay Stub 18), ECF No. 51-5.); (Xerox Resp. Opp'n Ex. D (Cox Dep. 55), ECF No. 58-4.)

In addition, Bismack alleges that Xerox violated section 41-10-30(A) of the SCPWA when Xerox failed to provide any notice prior to late September 2020 that his incentive pay was being retroactively changed for 2020. (Bismack Mem. Supp. Summ. J. 6-7, ECF No. 51-1.) It is undisputed that Bismack was not paid any "true up" commissions for the first three quarters of 2020. Xerox's position, as set forth above, is that Bismack is not owed anything for unpaid commissions due to the change from the Sales Incentive Plan to the Management Incentive Plan in 2020 and the failure to meet targets required to trigger incentive payments under the 2020 Management Incentive Plan. (Xerox Mem Supp. Summ. J. Ex. F (Cox Decl. ¶ 16), ECF No. 52-7.) Further, Bismack alleges that Xerox violated section 41-10-30(A) when it deducted $1500.00 from his final paycheck as partial reimbursement for the leadership retention award. (Bismack Mem. Supp. Summ. J. 7-8, ECF No. 51-1.)

> Section 41-10-30(A) provides that:
>
> [e]very employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. Any changes in these terms must be made in writing at least seven calendar days before they become effective. This section does not apply to wage increases.

With respect to whether Bismack was properly notified of the incentive payment plan changes, there are genuine issues of material fact. With respect to the deduction of $1500.00 from Bismack's last paycheck for partial reimbursement of the leadership retention award, Xerox alleges that it is undisputed that Bismack was notified in advance that Xerox could deduct the repayment amount for the leadership retention award from his final paycheck. (Xerox Resp. Opp'n Partial Summ. J. 9, ECF No. 58.)

Xerox has provided a document stating that when Bismack acknowledged the leadership retention award on Xerox's computer system, there was an "Acknowledgment landing page" that contained certain "original language." (Xerox Resp. Opp'n Partial Summ. J. Ex. I (Email), ECF No. 58-9.) The document states in pertinent part as follows:

> I see you already have the L@X record indicating the employee acknowledged the agreement. This is the original language that was on the Acknowledgement landing page when you accessed the "course" to do the acknowledgement (much like code of conduct):
>
> If an Award recipient voluntarily terminates employment with the Employer (including via retirement), or is involuntarily terminated for Cause (as defined below), prior to the end of the Retention Period, the recipient must promptly repay to the Company the full amount of the Award. Furthermore, *the Company, in its discretion, may deduct such repayment amount from the Award recipient's final paycheck or from any other wages or other amounts owed to the Award recipient, to the extent permitted by law, or to pursue collection of the repayment amount through any legal means.*
>
> *By acknowledging these terms and conditions and then receiving payment of an Award, an Award recipient agrees and authorizes Xerox to deduct and withhold from wages or any other amounts payable, the entire Award in the event of voluntarily termination of employment (including retirement), or involuntary termination for Cause, prior to December 31, 2021, and such acknowledgment serves as the Award recipient's written authorization for such deduction under applicable law.*
>
> The employee was also given a copy of the Performance Incentive Plan (attached) as a document to view/ download.

(Xerox Resp. Opp'n Partial Summ. J. Ex. I (Email), ECF No. 58-9.) This document appears to be an email in which the identity of the author is unclear[3] that was prepared in reference to this dispute after Bismack submitted his resignation letter on July 20, 2021. (Xerox Mem. Supp.

---

[3] On the whole, this document is confusing. The first page of the document is an email from Lisa Gabriel to Brenda Gottschall on July 29, 2021, discussing Xerox's contention that Bismack is required to repay the leadership retention award. (Xerox Mem. Supp. Summ. J. Ex. L (Document), ECF No. 52-13.) However, the remaining pages do not appear to be a part of the July 29, 2021 email, as the email does not reflect that anything was attached to it. The third page is an email dated December 11, 2020, from Global Comp Planning, but below this email is the pertinent language quoted above, which was clearly added after Bismack submitted his resignation letter on July 20, 2021. Therefore, it is unclear who is the author of this pertinent language and the date it was prepared.

8

Summ. J. 12 & Ex. L (Email), ECF Nos. 52-1 & 52-13.)  The language Xerox cites appears to have been copied from some other source.  There are issues regarding the authenticity of the document containing this "original language."  (Id. Ex. L (Email), ECF No. 52-13.)  The court finds that there are genuine issues of material fact regarding Xerox's ability to recoup payment of the leadership retention award from Bismack's final paycheck.

Based on the foregoing, Bismack's motion for partial summary judgment pursuant to the SCPWA is denied.  Further, Xerox's motion for summary judgment on Bismack's SCPWA claim that he is owed unpaid wages is denied.  Likewise, for the same reasons, Xerox's motion for summary judgment on Bismack's alternative claim for breach of contract is denied.[4]

## 2. Bona Fide Dispute

Xerox moves for summary judgment on Bismack's claim for treble damages and attorney's fees under the SCPWA.  (Xerox Mem. Supp. Summ. J. 13-14, ECF No. 52-1.)  Section 41-10-80(C) of the SCPWA states that an "employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."  S.C. Code Ann. § 41-10-80.  This language is permissive, and "the penalty is discretionary with the judge" because it is "unjust and harsh" in

---

[4] With respect to Bismack's breach-of-contract claim, a plaintiff may generally "assert all viable causes of action, consistent or not.  The restriction is not on the potential theories of recovery a plaintiff might pursue, but instead, on the recovery itself.  It is a fundamental rule of law . . . that there can be no double recovery for a single wrong."  Inman v. Imperial Chrysler-Plymouth, Inc., 397 S.E.2d 774, 776 (S.C. Ct. App. 1990); Encore Tech. Grp., LLC v. Trask, 871 S.E.2d 608, 614 (S.C. Ct. App. 2021) ("There may be multiple ways to recover for a single injury or set of injuries, but a party may only recover once for those injuries.").  In addition, Bismack alleges in his response that he is not pursuing his quantum meruit claim because Xerox appears to agree that the offer letter was a contract.  Therefore, the quantum meruit claim is dismissed without prejudice.  (Bismack Resp. Opp'n 7, ECF No. 60.)

"those cases where there is a bona fide dispute. . . ." Rice v. Multimedia, Inc., 456 S.E.2d 381, 383 (S.C. 1995). The question is "whether, at the time [the defendant denied the plaintiff wages due], it had a reasonable good faith reason for doing so." Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 782 (S.C. 2010).

Notwithstanding the court's finding of a genuine issue of material fact as to whether the incentive payments that Bismack alleges he is owed are wages due under the SCPWA, the court finds that Bismack cannot recover treble damages or attorney's fees because there is a bona fide dispute concerning the payment of the wages. Rice, 456 S.E.2d at 383 ("We do not believe the legislature intended to deter the litigation of reasonable good faith wage disputes; we do believe the legislature intended to punish the employer who forces the employee to resort to the court in an unreasonable or bad faith wage dispute." (quoting Apache E., Inc. v. Wiegand, 580 P.2d 769, 774 (Ariz. Ct. App. 1978))); Futch v. McAllister Towing of Georgetown, Inc., 518 S.E.2d 591, 598 (S.C. 1999) (declining to reinstate trial court's award of treble damages and attorney's fees because there was a bona fide dispute as to whether the employer owed the employee any wages); Temple v. Tec-Fab, Inc., 635 S.E.2d 541, 544 (S.C. Ct. App. 2006) (reversing trial court's imposition of treble damages and attorney's fees because there was a bona fide dispute over the wages in question); Davis v. MPW Indus. Servs., Inc., 535 F. App'x 220, 223-24 (4th Cir. 2013) (unpublished); Land v. Wal-Mart Stores E., L.P., No. 4:07-CV-00369, 2008 WL 1766723, at *10 (D.S.C. Apr. 15, 2008) (unpublished) ("[N]otwithstanding this court's finding of a genuine issue of material fact as to whether the incentive payments allegedly due were 'wages' under the Act, the court finds that [plaintiff] cannot recover treble damages or attorney's fees under the Act because there is a bona fide dispute concerning the payment of the wages.").

There is a reasonable, good faith wage dispute concerning Bismack's entitlement to "true up" incentive payments for the first three quarters of 2020 based on the ambiguous language of the offer letter regarding Bismack's annual salary and issues of fact regarding the applicable incentive plan. Thus, although Bismack may have a claim for "wages" due under the SCPWA, he is not entitled to recover treble damages or attorney's fees. Based on the foregoing, the court grants Xerox's motion for summary judgment on Bismack's claim for treble damages and attorney's fees.

### B. Xerox Counterclaim

Xerox moves for summary judgment on its counterclaim seeking repayment of the leadership retention award. (Xerox Mem. Supp. Summ. J. 15-16, ECF No. 52-1.) Bismack testified that he accepted the payment of the leadership retention award and that he did not pay it back based on Xerox's failure to pay him wages as agreed. (Bismack Resp. Opp'n Summ. J. Ex. C (Bismack Dep. 159-60), ECF No. 60-3.) After review, the court finds that there are genuine issues of material fact regarding whether there was a valid and enforceable contract requiring Bismack to repay the leadership retention award. Based on the foregoing, the court denies Xerox's motion for summary judgment on its counterclaim.

### C. Amount in Controversy

Based on the rulings as stated above, the amount in controversy, which questionably[5]

---

[5] In the Notice of Removal, Xerox aggregated Bismack's claims and included treble damages and attorney's fees, which is proper for purposes of determining the amount in controversy. (Not. Removal, ECF No. 1.) However, in the notice of removal, the attorney's fees calculation was based on a speculative number of hours and disproportionate to the potential recovery in this case at the time of removal. Xerox submitted that with treble damages, the amount in controversy was $38,751.84 and that a reasonable attorney's fee would exceed $37,200 (based on 124 attorney hours at $300.00 per hour), which brought the case just over the

exceeded $75,000.00 when this case was removed as required by 28 U.S.C. § 1332, has plainly and without question fallen far below this threshold. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332(a)(1). With regard to removed cases, 28 U.S.C. § 1447(c) requires that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." In Shanaghan v. Cahill,, the Fourth Circuit determined that "the supplemental jurisdiction model of discretion should apply when the amount in controversy falls below the [amount-in-controversy] threshold, just as it does when a federal question or a diverse claim falls out of a case." 58 F.3d 106, 110 (4th Cir. 1995); see also 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988) ( "[The Court's opinion in United Mine Workers v. Gibbs, 383 U.S. 715 (1966),] strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent state claims, the court has discretion to remand the case to state court."). 28 U.S.C. § 1367(c) provides that "courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "[T]rial courts enjoy wide latitude in determining whether or not to" exercise

---

$75,000.00 amount-in-controversy threshold. (Not. Removal, ECF No. 1.); Delph v. Allstate Home Mortg., Inc., 478 F. Supp. 2d 852, 854 (D. Md. 2007) ("While it is true that Plaintiff may potentially recover more than $75,000 in the aggregate, [Defendant] has not proven this by a preponderance of the evidence. [Defendant's] arguments, particularly with respect to attorneys' fees and punitive damages, do not establish any specific amount [Defendant] believes Plaintiff may recover.")

supplemental jurisdiction.  Shanaghan, 58 F.3d at 110.  Moreover, "[t]here are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction." Id. (emphasis in original).

"In general, courts should weigh convenience and fairness to both parties, as well as the interests of judicial economy."  Id.  In the case at bar, very little research, if any at all, would need to be performed by the parties, and any additional factual research would have to be performed regardless of the forum.  Taylor v. Lotus Dev. Corp., 906 F. Supp. 290, 299 (D. Md. 1995).  Thus, remanding this case would not be unduly inconvenient or unfair to the parties.  In addition, Bismack has a pending complaint with the South Carolina Department of Labor Licensing and Regulation regarding his alleged unpaid wages, which further supports remanding this case to the state court.  (Xerox Mem. Supp. Summ. J. Ex. P (DOL Complaint), ECF No. 52-17.)

Based on the foregoing, the court declines to retain jurisdiction over the remaining SCPWA and state law contract claims.  Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008) ("[B]ecause the lack of subject matter jurisdiction may be noticed by the district court sua sponte or by any party, the court may enter a remand order sua sponte." (internal citations omitted)).  When this case was removed, the basis for satisfying the amount-in-controversy requirement was questionable, and in light of the instant order, the amount in controversy plainly falls far below $75,000.00.  The court finds no basis to retain jurisdiction over this matter, where the complaint was filed in state court and alleges solely state causes of action, and remand would not be inconvenient or unfair.

It is therefore

**ORDERED** that Bismack's motion for partial summary judgment, docket number 51, is denied. It is further

**ORDERED** that Xerox's motion for summary judgment, docket number 52, is granted in part and denied in part. It is further

**ORDERED** that the court lacks jurisdiction over this matter under § 1332 and declines to exercise supplemental jurisdiction over the remaining claims in this case. This matter is remanded to the Greenville County, South Carolina, Court of Common Pleas.

**IT IS SO ORDERED.**

                                                     s/Henry M. Herlong, Jr.
                                                   Senior United States District Judge

Greenville, South Carolina
December 22, 2022